STATE of Tennessee, Appellee,

v.

Ellamae GREGG, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Sept. 21, 1993.

Permission to Appeal Denied by
Supreme Court Feb. 22, 1994.

Greg Eichelman, Public Defender, Michael A. Walcher, Asst. Public Defender, Morristown, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, C. Berkeley Bell, Dist. Atty. Gen., Cecil C. Mills, Jr., Asst. Dist. Atty. Gen., Greeneville, for appellee.

## OPINION

PEAY, Judge.

The defendant was found guilty by a jury of driving while under the influence of an intoxicant. For this offense she was sentenced to eleven months and twenty-nine days in the county jail, suspended after service of forty-eight hours. In this appeal as of right, the defendant challenges the trial court's comments concerning the reliability of the blood testing instrument used by the State and the prosecutor's questions concerning the results of a second blood alcohol test which had been performed for the defendant on a sample furnished pursuant to T.C.A. § 55–10–410(e). We find these issues are without merit, and the judgment of the trial court is affirmed.

On April 5, 1992, the defendant and her husband were returning to their home in Newport after spending the evening at a country dance club in Johnson City. An officer with the Greene County Sheriff's Department observed the defendant's car weaving and began following her. The officer stopped the car and asked to see the defendant's driver's license. Although the defendant complied with the officer's instructions, her speech was slurred, and she was very slow in responding to questions.

The officer asked the defendant to perform three field sobriety tests, all of which she failed. At this point she was placed under arrest for driving under the influence and taken to a Greeneville hospital where, with her consent, two vials of blood were drawn. One vial was taken to the TBI crime lab in Knoxville for testing. Pursuant to T.C.A. § 55–10–410(e), the other vial was given to the defendant so that she could obtain her own drug and alcohol test. The blood test performed by the TBI revealed a blood alcohol content of .07 and a trace of Valium.

According to the defendant's testimony, she had not taken Valium since having a violent reaction to it nearly twenty years ago. She stated that she had consumed the equivalent of three drinks of alcohol over a five hour period and was not impaired at the time of the stop. The defendant testified that her driving had been affected by the fact that she had been unfamiliar with Greeneville and had become lost due to a detour. She explained that she had experienced difficulty performing two of the field sobriety tests because of an ankle injury she had suffered two days earlier.

At trial the State produced three witnesses who testified that the defendant had appeared intoxicated. The agent who tested the blood was called to the witness stand. After the defense attorney repeatedly questioned the agent about the fallibility of the machine, the court responded:

... you almost asked something that is impossible to answer 'yes' or 'no.' I suppose in the whole universe there's some things that's always a hundred percent, but that's hard to just say which those things are. Most of us know whether our automobiles are operating at about a hundred percent. Most of us know when it don't run and we know the difference, so I think that's what this lady is telling you. When it's not operating she knows it and has it worked on when it is operating she knows it and that's it. Anything else?

Following these remarks the defense counsel moved for a mistrial. The court denied the motion but instructed the jury to disregard the analogy and "determine your weight and credibility of this witness on what you heard, not what I said."

In her first issue the defendant argues that the trial court's comments were inappropriate. More specifically, she claims that the comments bolstered the State's witness and prejudiced the defendant. We find this issue to be without merit.

■ The trial judge's responsibility in commenting on a case is not to express any thought which would imply that his or her opinion was in favor of or against the defendant. *State v. Harris,* 839 S.W.2d 54, 66 (Tenn.1992); *State v. Suttles,* 767 S.W.2d 403, 406–07 (Tenn.1989). There is no evidence that the comments had any relevance to the guilt or innocence of the defendant. Furthermore, the witness had completed her testimony, and, by defense counsel's own admission, she probably could not have answered the question which had been interrupted by the judge.

■ However, even if the trial judge erred in making the statement, the curative instruction to the jury was sufficient to correct any error on the part of the court. A jury is presumed to have followed the instructions of the trial court. *State v. Blackmon,* 701 S.W.2d 228, 233 (Tenn.Crim.App.1985). In considering the entire record in this cause, we are satisfied that any error was harmless beyond a doubt. T.R.A.P. 36(b); Tenn. R.Crim.P. 52(a).

The second issue before the Court concerns the prosecutor's questions pertaining to the vial of blood given to the defendant. The defendant chose not to include these test results in her case and objected to the prosecutor's questions concerning the blood test.

Although the prosecutor's questions were clearly error and are not viewed favorably by this Court, they do not support reversal of the conviction.

 The prosecutor initiated the following series of questions on cross-examination of the defendant:

Q (Prosecutor) What did you do with your blood vial?

A I have [sic] it to Mr. ...

Q Walcher?

A Yes, sir.

Q And do you know whether or not you had it tested?

A Yes, sir, he had it tested.

Q And do you know where the results of the test are?

A Do I know where they are?

Q Um-hmmm.

At that point defense counsel objected and, claiming prejudice, moved for a mistrial. The trial judge sustained the objection but denied the motion for mistrial.

Pursuant to statute, the defendant had a right to obtain an additional sample of blood for independent testing. T.C.A. § 55–10–410(e). What the defendant did with the sample, however, was her prerogative. If the defendant chose not to use the independent test in her case, the prosecutor should not have been allowed to question her concerning the test results. Moreover, even if the defendant knew the test results, the results were inadmissible absent an appropriate evidentiary foundation. As the only rationale for this line of questioning was to create a negative inference with the jury, the actions of the prosecutor were inappropriate and inconsistent with the statute in question.

 Despite the improper questioning, we are satisfied that the error was harmless in this particular case. The jury had already been informed by the arresting officer that two vials of blood had been drawn, and one was given to the defendant. The defendant herself volunteered that the vial in her possession was at the hospital for testing but was not initially tested because her name was misspelled. Thus the jury was well aware of the fact that there was another vial of blood

that had been available for testing. Additionally, the fact that the State's test reflected a blood alcohol content of .07 suggests that the test results were not the most significant aspect of the evidence against the defendant.

Clearly the testimony of the arresting officers and other witnesses provided adequate evidence to support the verdict. Each witness testified that the defendant exhibited the appearance and behavior of an intoxicated person. Defense counsel failed to show prejudice from the prosecutor's questioning. This issue must, therefore, be resolved in favor of the State.

For the reasons set out above, the trial court's judgment is affirmed.

SUMMERS, J., and John K. BYERS, Senior Judge, concur.