# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1999

FILED

May 12, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9804-CC-00191** |
| | ) | |
| Appellee, | ) | |
| | ) | **WILLIAMSON COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. DONALD P. HARRIS, JUDGE** |
| **KELLY A. HANCOCK,** | ) | |
| | ) | |
| Appellant. | ) | **(DUI, FIRST OFFENSE)** |


FOR THE APPELLANT:                    FOR THE APPELLEE:

**ERIC L. DAVIS**                                      **JOHN KNOX WALKUP**
317 Main Street                                Attorney General & Reporter
Franklin, TN  37064

                                              **KIM R. HELPER**
                                              Assistant Attorney General
                                              2nd Floor, Cordell Hull Building
                                              425 Fifth Avenue North
                                              Nashville, TN  37243

                                              **RONALD L. DAVIS**
                                              District Attorney General

                                              **SHARON E. TYLER**
                                              Assistant District Attorney General
                                              481 East Main Street
                                              Hohenwald, TN  38462


OPINION FILED _____

REVERSED AND REMANDED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Kelly A. Hancock, appeals as of right from her conviction in the Williamson County Circuit Court. Defendant was indicted for the Class A misdemeanor offense of DUI, first offense, committed on February 20, 1997. Defendant filed a motion to suppress the results of the State's ethyl alcohol test of Defendant's blood procured on February 21, 1997. The trial court denied the motion following a hearing. Defendant was found guilty following a jury trial. In her appeal, the Defendant presents the following issues:

> 1) Whether the trial court erred in denying Defendant's motion to suppress the ethyl alcohol test results of Defendant's blood based upon the State's failure to comply with the requirements of Tennessee Code Annotated section 55-10-406;
>
> 2) Whether the trial court erred in allowing the State to question its forensic toxicologist regarding the disposition of Defendant's blood sample to Quest Diagnostic Laboratories for independent testing;
>
> 3) Whether the trial court erred in permitting the State to cross-examine the Defendant concerning the Defendant's Motion to Preserve Blood Sample for testing filed on April 30, 1997; and
>
> 4) Whether the evidence at trial failed to establish the Defendant's guilt beyond a reasonable doubt.

For the reasons stated below, we reverse and remand for a new trial.

At the hearing on Defendant's motion to suppress, the Defendant testified that she was involved in an automobile accident on Hillsboro Road in Williamson County, Tennessee. Defendant was driving home when another car crossed the center line and struck her van. As a result of the accident, Defendant's air bag inflated and her driver's side door was jammed. A passing motorist stopped at the scene and told Defendant he had notified the police. Defendant telephoned Randy Wilkerson, her date that evening, to advise him of her accident and asked him to come to the

scene. She stated she was also concerned about her four (4) children at home alone.

After the police arrived, she explained to them that she had been hit by the other vehicle. Most of the police officers went to the other vehicle driven by Mabel Garrett. Because she was injured Defendant went to an ambulance which had arrived at the scene. However, she refused to go to the hospital in the ambulance because she thought she was alright and had already called Mr. Wilkerson to pick her up. The police questioned Defendant regarding her consumption of alcohol and she initially responded that she had not been drinking but had been to a concert in downtown Nashville. Defendant then admitted that she had consumed one (1) beer during dinner and two (2) beers while at the concert. She agreed to submit to a battery of field sobriety tests, including standing on one (1) leg and the nose to finger tests. Corporal Larry Williams then asked Defendant if she would submit to a blood test. Defendant asked Deputy Marsha Brolsma what would happen if she refused to submit to the test. Deputy Brolsma responded that she could lose her driver's license for six (6) months, so Defendant agreed to submit to the test. Defendant recalled that the officers did not read an Implied Consent form to her, but did provide it for her signature. She was left, unhandcuffed, by the police to stand by herself at her van.

After Randy Wilkerson arrived at the scene, they left the scene in Wilkerson's truck to go to the hospital. While en route to the hospital, they had to stop as they did not know the way to the hospital. Deputy Brolsma was following them, and she agreed to lead them to the hospital. As Defendant was unable to walk when she arrived, she was assisted into the emergency room. Defendant's blood was drawn

-3-

first, then a brace was placed on her arm and her leg. Her arm was sprained, her leg was fractured, and she suffered additional burns to her arm and face from the deplosion of the airbag. Wilkerson left the hospital and went to Defendant's home to check on the children. While she was at the hospital, Defendant telephoned Wilkerson several times. Defendant also called her secretary and a cousin. After calling Wilkerson a final time to ask him to pick her up from the hospital, Deputy Brolsma informed Defendant that she was not going home but that she was under arrest for DUI. The Defendant first believed the deputy was joking. Defendant was, however, taken to jail.

According to Wilkerson's testimony, Defendant called on February 20, 1997, and informed him that she had been involved in an accident. Defendant did not say anything over the telephone to lead him to believe she was under arrest for DUI, however she was screaming and hysterical. After he arrived at the accident scene, Wilkerson found Defendant standing at her van with no police officers. She told him that her foot was hurting, so he asked Deputy Brolsma if he could take Defendant to the hospital. After conferring with Corporal Williams, Brolsma responded that he could transport her to the hospital and that she (Brolsma) would follow. Wilkerson assumed the officers were going to the hospital only because there had been a major accident. Realizing that he did not know the way to the hospital, Wilkerson pulled over along the way and motioned to Brolsma to stop. Deputy Brolsma advised Wilkerson to follow her to the hospital. After arriving at the hospital, Wilkerson left to go to Defendant's home and check on her children. Defendant called him several times while he was at her home, and the last time she called she told him she had been arrested.

On cross-examination, Wilkerson recounted their alcoholic beverage consumption on February 20, 1997. Wilkerson admitted that the Defendant had consumed three (3) beers that evening. The Defendant dropped him off following their date at 10:00 p.m.

Deputy Marsha Brolsma also testified at the hearing on the motion to suppress. Brolsma had been with the Williamson County Sheriff's Department for 1.5 years, receiving three (3) days accident investigation training and two (2) days DUI investigation training at the Tennessee Law Enforcement Training Academy. This was Deputy Brolsma's first accident investigation and her first DUI investigation. On February 20, 1997, she was on duty and was dispatched to the scene of an accident on Hillsboro Road. After arriving at the scene at approximately 11:22 p.m., Brolsma encountered the Defendant. While trying to retrieve her license and registration, Brolsma identified a strong odor of alcohol about the Defendant's person. The Defendant admitted that she had consumed one (1) Zima, an alcoholic beverage, but was noticeably staggering and argumentative. Brolsma observed Corporal Williams administer some field sobriety tests, during which the Defendant continued to swagger and argue with the officers.

Deputy Brolsma read the content of the Implied Consent form to the Defendant, including the beginning portion of the form which states, "You are under arrest." Brolsma then inquired whether the Defendant understood everything that was read to her from the form. The Defendant responded affirmatively and agreed to submit to a blood test. Corporal Williams also signed the form as a witness, and Brolsma then left the area to continue her investigation upon the assumption that Corporal Williams would take charge of the Defendant. Upon returning to that area,

Brolsma found the Defendant in Randy Wilkerson's pickup truck. After inquiring from her supervising Sergeant as to why the Defendant was in Wilkerson's truck, the Sergeant informed her that he had given permission for the Defendant to ride to the hospital with Wilkerson.

Upon cross-examination, Brolsma explained that Corporal Williams administered the field sobriety tests to the Defendant as Brolsma had never effected a DUI arrest, or any other arrest, and had not at that time attended the Tennessee Law Enforcement Training Academy. This was her first accident investigation. She admitted that she might have made mistakes such as not handcuffing the Defendant or placing her in her patrol car when she was arrested. Brolsma stated that she equated her reading the Implied Consent Form to the Defendant with placing her under arrest. Because she misunderstood her supervisor's instructions, Brolsma failed to handcuff the Defendant or place her in the patrol car. While Brolsma did not know Defendant had called Wilkerson to pick her up from the hospital, Brolsma did not recall that the Defendant was surprised when she was arrested at the hospital.

Corporal Larry Williams also testified at the hearing on the Motion to Suppress. Upon arriving at the accident scene and encountering the Defendant, Williams described her as argumentative, irritated, with slurred speech and having an odor of alcohol about her person. Defendant informed him that she had one (1) Zima to drink, and he found another unopened bottle of Zima in the Defendant's van. As she was complaining of ankle pain, Williams had a paramedic examine Defendant prior to administering any field sobriety tests. Because of the obvious extent of her injuries, Williams thought Defendant was making an unwise choice when she refused medical assistance. After asking the Defendant to perform the

finger to nose test two (2) times with each hand and her failing it all four (4) times, Williams stated that in his opinion the Defendant was drunk.

Williams observed Deputy Brolsma read the Implied Consent form to the Defendant and then witnessed Defendant sign the form. Specifically, Williams recalled hearing Brolsma notify Defendant that she was under arrest for DUI prior to reading the form to her. Williams stated that he told Brolsma to handcuff the Defendant and place her in the patrol car, but she failed to do so. Williams then left and went to the second car involved in the accident to do technical work. When Williams returned to find the Defendant absent from the scene, Sergeant Oscar Davidson explained that he let the Defendant go to the hospital as he did not know she was under arrest.

At trial, Deputy Brolsma testified to substantially the same recurrence of events on February 20 and 21, 1997. Additional testimony included her recollection that Defendant was unable to touch her nose every time she attempted the finger to nose test, was "wobbly" on her feet and was confused as to how to perform the test. While at the hospital having Defendant's blood drawn, Brolsma recalled that Defendant stated, "They'd better hope there was enough alcohol in her system," and became very aggressive. Brolsma took possession of the blood sample and checked it into evidence at the Williamson County Sheriff's Department later that day. On cross-examination, Brolsma admitted that there were some factual inconsistencies within her Tennessee Uniform Accident Report. Brolsma admitted she had no knowledge that Defendant had a fractured leg, a sprained wrist, or injuries from the airbag. She did acknowledge the Defendant was injured and visibly

shaken at the accident scene. Brolsma admitted that Defendant was left unrestrained for nearly fifty (50) minutes at the scene following her arrest.

The State's second trial witness was Corporal Larry Williams who has had extensive training and experience in DUI investigations. Williams added to his testimony from the motion to suppress that while he believed the Defendant was drunk, he left it up to Deputy Brolsma to determine whether the Defendant should be arrested.

Special Agent Michael Little, a forensic toxicologist with the Tennessee Bureau of Investigation, testified that he performed an ethyl alcohol analysis of the Defendant's blood. Defendant's blood was found to contain 0.16 grams percent of ethyl alcohol. Little also described that he performed such testing using procedures to confirm the accuracy of the test results. When asked if he destroyed the blood sample following the testing, Little explained that he had given the blood sample to a representative of Quest Diagnostic Laboratory to perform an independent examination of the amount of ethyl alcohol in Defendant's blood. On cross-examination, Agent Little conceded that he performed two (2) tests of the Defendant's blood sample. The first test registered 0.1620 grams percent of ethyl alcohol and was taken on March 13, 1997, and the second test of May 6, 1997 registered 0.1667 grams percent of ethyl alcohol. Little explained that the TBI routinely drops the final two digits as standard operating procedure, therefore both test results resulted in a 0.16 percentage. According to his studies with the Tennessee Highway Patrol and the TBI, Little concluded that a 125 pound female, standing five (5) feet, one (1) inches tall, would have to consume seven (7) to nine (9) drinks to register an ethyl alcohol level of 0.16.

Ron Perry testified as a character witness for the Defendant. He stated that the Defendant oversees his firm's benefits department, supervising fifteen (15) employees. While Perry had seen the Defendant consume alcoholic beverages on occasion, he had never seen her drunk or intoxicated. The day following the accident of February 20, 1997, Defendant was unable to come to work due to her injuries.

Joy Sullivan, cousin and co-employee with the Defendant, stated that the Defendant missed approximately one (1) month of work following this accident. The Defendant was, in her opinion, a "very truthful, honest and upstanding member of the community."

Randy Wilkerson testified again at the trial. Wilkerson had known the Defendant for fifteen (15) years, but the evening of February 20, 1997, was their second date. They met in the Green Hills area that night after work. The Defendant drove them to dinner on 2nd Avenue where they ate oysters and drank two (2) beers each. They walked to a concert at the nearby Nashville Arena, where they both consumed two (2) additional beers. After the concert concluded around 10:00 p.m., the Defendant drove Wilkerson to his truck and he returned to his home in Madison. The remaining portion of his testimony was substantially the same as his testimony from the hearing on the motion to suppress. However, he did add that no one could have judged the Defendant's state of sobriety at the scene of the accident because she was "scared to death," screaming, and crying.

The Defendant concluded the testimony at trial. In addition to a recollection of the events similar to what she previously testified to at the hearing on the motion

to suppress, Defendant testified to the events preceding the accident. On February 20, 1997, she left work at approximately 4:30 p.m. After returning home, she prepared dinner and consumed one (1) Zima prior to leaving. She threw the empty Zima bottle in the back of her car, then drove to a friend's home to pick up Randy Wilkerson. She drove Wilkerson to the Nashville Arena and parked, then they walked to Joe's Crab House where she consumed one (1) beer and ate oysters and shrimp. Defendant specifically stated that Wilkerson was mistaken when he described that they each consumed two (2) beers at dinner. While she was at the concert, Defendant did consume two (2) additional beers. She believed she was sober and fine to drive her car.

Defendant also stated that she became upset at the scene of the accident because the police officers were accusing her of drinking and driving. She became further irritated when, upon entering the hospital, she was required to give a blood sample before they would examine her injuries.

On cross-examination, Defendant denied any knowledge of her blood sample being sent to the Quest Diagnostic Laboratory for independent testing. She surmised that her previous attorney might have requested the test.

The State called Eunetta Creade, Deputy Clerk with the Williamson County Circuit Court, as a rebuttal witness. Over objection by the Defendant, Creade read into the record the Defendant's "Motion to Preserve Blood Sample for Testing" which was filed before the trial. Creade also read its companion Order establishing permission to preserve the Defendant's blood sample for independent analysis.

I. MOTION TO SUPPRESS

Defendant argues that the trial court erred in denying her motion to suppress the results of her ethyl alcohol test performed by Agent Michael Little because the State failed to comply with the requirements of Tennessee Code Annotated section 55-10-406. Tennessee Code Annotated section 55-10-406(a) provides that:

> Any person who drives any motor vehicle in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood; provided, that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person to have been driving while under the influence of an intoxicant or drug, as defined in § 55-10-405.
> . . .
> (3) If such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test and advised of the consequences for refusing to do so, refuses to submit, the test shall not be given and such person shall be charged with violating this subsection . . .

The Defendant asserts that because she was not properly arrested, a necessary statutory prerequisite was not met for a law enforcement officer to request and obtain a blood sample. Therefore, Defendant argues that the blood sample was obtained when Defendant was not under valid "arrest" and the results of such sample are, therefore, inadmissible.

Following the hearing on the motion to suppress, the trial court found that there was no question of whether the police officers had probable cause to arrest. While the trial court did not find that the Defendant was in police custody, the Defendant was notified that she was under arrest and agreed to the terms of the Implied Consent form. The miscommunication between the police officers did not make her consent illegal. The trial court specifically noted that under the authority of State v. Evetts, 670 S.W.2d 640 (Tenn. Crim. App. 1984), a defendant does not

-11-

have to be in actual physical custody for a valid waiver by the defendant under the terms of the Implied Consent statute.

"The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The findings of the trial court shall be upheld so long as the greater weight of the evidence supports those findings. Id. Unless the evidence preponderates otherwise, the trial court's findings of fact in the suppression hearing will be upheld. Furthermore, this court may consider the entire record, including the evidence submitted both at the suppression hearing and at trial, in evaluating the correctness of the trial court's ruling on Defendant's pretrial motion to suppress the results of her ethyl alcohol blood analysis. State v. Henning, 975 S.W.2d 290, 297 (Tenn. 1998).

Both during the suppression hearing and the trial, Deputy Brolsma and Corporal Williams testified that the Defendant was notified that she was under arrest for DUI. Specifically, Defendant was told, "You are under arrest." While the Defendant testifies that she was never notified of the arrest until she was preparing to leave the hospital on February 21, 1997, all other testimony is contrary. The trial court's findings of fact must be upheld so long as the evidence does not preponderate otherwise. Odom, 928 S.W.2d at 23. All reasonable and legitimate inferences from the testimony indicate, under the strongest legitimate view of the evidence, that the Defendant was notified that she was under arrest either prior to the reading of the Implied Consent form or during the reading of the Implied Consent form.

In addition, even if there is a some validity to the dispute regarding the status of her arrest, the purpose of the statute "is *not* to carve out a rule of exclusion when the provisions . . . have not been followed." See State v. Jerry Huskins, No. 01C01-9707-CR-00253, slip op. at 7, Putnam County (Tenn. Crim. App., at Nashville, September 29, 1998), perm. to appeal denied (Tenn. 1999). An officer's non-compliance with the requirements of Tennessee Code Annotated section 55-10-406 does not warrant suppression of the Defendant's blood alcohol test results at trial. Id.

## II. ADMISSIBILITY OF EVIDENCE

The Defendant argues that the trial court erred in allowing the State to introduce testimony concerning the disposition of Defendant's blood sample for independent testing. Over objection by the Defendant, Special Agent Michael Little was permitted to testify that he gave Defendant's blood sample to a representative of Quest Diagnostic Laboratory on May 6, 1997, to perform an independent blood alcohol analysis of that sample. The State argues that any impropriety in this line of questioning is harmless error.

Tennessee Code Annotated provides that any person tested in accordance with section 55-10-410 "shall be entitled to have an additional sample of blood or urine procured and the resulting test performed by any medical laboratory of that person's own choosing and at that person's own expense; provided, that the medical laboratory is licensed pursuant to Title 68, Chapter 29." Tenn. Code Ann. § 55-10-410(e). This court has recognized the defendant's right to have an independent test of her blood sample conducted for its ethyl alcohol content under the authority of

Rule 16(a)(1)(C) of the Tennessee Rules of Criminal Procedure. State v. Gilbert, 751 S.W.2d 454, 460 (Tenn. Crim. App. 1988) (citations omitted).

It is inappropriate for a prosecutor to question a defendant regarding the defendant's independent testing of a blood sample if the defendant chooses not to introduce the results of the test in her defense proof. State v. Gregg, 874 S.W.2d 643, 645 (Tenn. Crim. App. 1993). While the court found the error to be harmless for the defendant in Gregg, we cannot find this questioning as harmless for Defendant in the case sub judice. In Gregg, the court observed that prior to the questions regarding independent testing, the proof presented to the jury demonstrated that two (2) vials of blood were drawn during the testing, one (1) of which was given to the defendant. Id. at 645. Furthermore, the court noted that the defendant herself "volunteered that the vial in her possession was at the hospital for testing but was not initially tested because her name was misspelled. Thus, the jury was well aware of the fact that there was another vial of blood that had been available for testing." Id. In the case of this Defendant, no other evidence had been presented to the jury regarding any independent testing of the Defendant's blood.

In addition, Defendant also contends that any cross-examination of her by the State regarding an earlier "Motion to Preserve Blood Sample for Testing" was permitted in error by the trial court. While Defendant denied any knowledge of such motion during her cross-examination, the Deputy Court Clerk was later called as a rebuttal witness by the State and permitted to read the contents of the motion and the companion order allowing the preservation of the blood sample for independent testing. While Defendant does have a right to obtain an additional sample or obtain the existing sample of blood for an independent ethyl alcohol analysis, whatever the

-14-

defendant chooses to do with the sample is her prerogative. Gregg, 874 S.W.2d at 645. The prosecutor should not have been allowed to question Defendant concerning the test results or to present rebuttal testimony from the court clerk since Defendant chose not to use independent test results in her proof. The only possible rationale for this line of questioning was to create a negative inference for the jury. Id. In addition, as Defendant could not be properly impeached by a motion or court order she did not have knowledge of, such test results were inadmissible absent an appropriate evidentiary foundation. Id. There was no objection to this line of questioning of the Defendant. However, the State conceded during oral argument in this court that it was error to allow this line of questioning. Particularly in light of the error regarding the questioning of Agent Michael Little about independent testing of the blood sample, we cannot find this error to be harmless. The cumulative effect of the questioning affected the substantial rights of the accused, and resulted in prejudice to the judicial process. Tenn. R. Crim. P. 52(b); Tenn. R. App. P. 36(b).

### III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence introduced at trial failed to establish the Defendant's guilt beyond a reasonable doubt. She was convicted of one (1) count of driving while under the influence with a blood or breath alcohol level at or above .10 percent. Tenn. Code Ann. § 55-10-401(a)(2). Specifically, Defendant argues that the evidence was tainted due to some foreign material in the blood sample test tube.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

First, we observe that both Brolsma and Williamson, the police officers investigating the accident scene, testified that the Defendant had the odor of alcohol about her person, was argumentative and was staggering following the accident. Defendant was also unable to successfully complete any of the field sobriety tests which were administered to her at the scene. By her own admission, Defendant had been drinking and driving that evening. Her companion that night, Randy Wilkerson, also testified that Defendant had consumed at least (3) alcoholic beverages. A Zima bottle was found in Defendant's car by the police.

Regarding the test tube sample, TBI Agent Michael Little testified that he tested the Defendant's blood sample twice. He also described routine procedures by which his testing of Defendant's blood was monitored and confirmed to manifest accurate results. While there was a slight variance in the results of the two (2) tests, Little explained that such variance was due to a slight variability in the instrument. As the State points out within its brief, any suggestion that a foreign substance was in the test tube is merely speculation by the Defendant. Any questions concerning the credibility of the witnesses and the weight and value to be given the evidence was determined by the trier of fact. We will not reweigh the evidence. In the strongest legitimate view of the evidence, there is more than sufficient evidence whereby the trier of fact could have found Defendant guilty of driving under the influence. This issue is without merit.

CONCLUSION

The Defendant's issues challenging the sufficiency of the evidence and the admissibility of the blood tests performed by the TBI are without merit. However, finding reversible error regarding Defendant's other two issues, we reverse the judgment and remand this case for a new trial.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
-17-

JOHN H. PEAY, Judge

-18-

_____
JERRY L. SMITH, Judge