FILED
07/08/2019
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 29, 2019 Session

**STATE OF TENNESSEE v. KEVIN TODD PARTON**

**Appeal from the Criminal Court for Knox County**
**No. 109592   G. Scott Green, Judge**

_____

**No. E2018-01209-CCA-R3-CD**

_____

A jury convicted the Defendant, Kevin Todd Parton, of driving with a blood alcohol content of 0.08 percent or more ("DUI per se") and driving under the influence of an intoxicant ("DUI").  The trial court merged the convictions and sentenced the Defendant to eleven months and twenty-nine days, with ten days to be served in confinement.  The Defendant appeals, asserting that the trial court erred in denying a motion for a mistrial, that the trial court erred in admitting the results of the blood alcohol test, and that the arrest warrant was defective.  After a thorough review of the record, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Marcos Garza (at trial) and Keith Lowe (at trial and on appeal), Knoxville, Tennessee, for the appellant, Kevin Todd Parton.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joseph Welker and Miriam Johnson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant was stopped after law enforcement observed him driving erratically in the early morning hours of October 11, 2015. After performing poorly on field sobriety tests, he was arrested and consented to a blood draw, and testing revealed a blood alcohol content of 0.183 percent.

On October 11, 2015, a magistrate issued three arrest warrants for the Defendant, charging him with DUI, a roadway lane violation, and failure to provide evidence of compliance with the financial responsibility law. The sworn affidavit signed by Officer Nina Hummel and attached to the warrant for DUI recited the circumstances of the offense as allegedly committed by the Defendant. However, the sworn affidavits attached to the other two arrest warrants included no facts supporting the charged offenses; instead, those affidavits contained only facts regarding an unrelated domestic altercation occurring on the same night and involving a defendant whose last name was "Barton." The parties noted at trial that the State acknowledged these arrest warrants were defective and that it had dismissed the accompanying charges prior to the grand jury proceedings. The Defendant was bound over on July 18, 2016, and he was subsequently indicted on December 13, 2016, for one count of DUI per se and one count of DUI.

The Defendant filed a "Motion to Dismiss Pursuant to T.C.A. 40-2-102," alleging that the State had failed to commence proceedings within the statute of limitations because the defects in the arrest warrants for the dismissed charges rendered the remaining arrest warrant for DUI likewise void and because the indictment was not returned prior to the expiration of the limitations period. The motion was heard on two separate dates, and the parties agreed to stipulate regarding what the magistrate's testimony would have been about the circumstances surrounding the signing of the arrest warrants. The hearings are not a part of the record on appeal. An undated stipulation was filed in the record after the hearings and after the trial court's ruling, and the stipulation reflected that the magistrate did not recall signing the arrest warrants, that he believed incorrect affidavits were attached to two of the arrest warrants by mistake, and that he would normally read the narrative "carefully" for the principal charge — in this case the DUI — and then "move[] on to 'ancillary' charges."

The trial court found that the arrest warrant was at most voidable due to the defects in the other arrest warrants contemporaneously signed by the magistrate. Because it found that the arrest warrant was facially valid at the time the indictment was returned and that the Defendant was before the court "as a consequence of the action" of the grand jury, the trial court denied the motion to dismiss.

The Defendant does not challenge the sufficiency of the evidence, and we give a brief summary of the facts presented at trial as pertinent to the issues on appeal. Officer Hummel testified that on October 11, 2015, soon after midnight, she observed the Defendant's car driving outside its lane, coming to a complete stop at a green light, veering off the roadway, and driving with the tires rubbing against the curb. Officer Hummel stopped the Defendant, who smelled of alcohol, acknowledged that he had been drinking, and failed a field sobriety test. Officer Hummel found two open cans of beer under the driver's seat of the vehicle. A video of the stop was introduced into evidence.

Officer Hummel arrested the Defendant, and he consented to have his blood drawn. The Defendant waited while another man, who had likewise been arrested for DUI by Officer Hummel and her partner, was having his blood drawn. Officer Hummel testified that she observed the phlebotomist draw the Defendant's blood and place it into a vial and kit. Officer Hummel sealed the kit and placed it into the "evidence box for blood collection" at the Knox County Detention Facility. The video of the Defendant's arrest introduced into evidence largely shows the Defendant's blood being drawn, packaged, and sealed, and it shows Officer Hummel initialing the sealed box.

During a jury-out hearing, the trial court ruled that the Defendant could cross-examine Officer Hummel regarding the mistaken affidavits attached to the dismissed charges to demonstrate that her paperwork may have been prone to mistakes. The affidavits were introduced into evidence and read into the record. Officer Hummel acknowledged that she had sworn under oath that the Defendant had failed to maintain his lane or provide proof of insurance and that the facts alleged in the affidavits did not support the charged offenses.

Special Agent Melanie Carlisle of the Tennessee Bureau of Investigation ("TBI") testified that the TBI typically receives blood kits either by mail or through a drop box in the evidence receiving unit. She stated that the drop box is secure and that according to TBI procedure, a forensic technician would retrieve the evidence and place it into a refrigerator. The forensic technician would also open the evidence, inventory it, label it, and assign it a lab number. The defense objected to the chain of custody because Special Agent Carlisle's testimony and a chain of custody report indicated that the blood sample had been handled and assigned a laboratory number by a forensic technician who was not testifying at trial. The trial court overruled the objection.

Special Agent Carlisle testified that she received two tubes of blood which were labeled with the Defendant's name, the Defendant's birthdate, the time of collection, and the "phlebotomist I.D." The tubes of blood were also labeled with a barcode. Special Agent Carlisle noted that the factory labels on the tubes could not be removed, but she could not say what adhesive was used on hospital labels. There was no testimony

regarding what sort of label held the identifying information. She received the tubes of blood with the submittal form completed by Officer Hummel and would have noted any "discrepancies between the two, anything like that." The prosecutor did not specifically ask Special Agent Carlisle whether the box was sealed when it was received by the TBI, but she identified the toxicology request form signed by Officer Hummel and stated it was "located inside the sealed kit." Her analysis showed that the blood had an alcohol content of 0.183 percent.

Special Agent Carlisle acknowledged that she would have no way of knowing if the person who collected the samples had inadvertently switched the Defendant's blood with that of another defendant in a different DUI case. She did not notice any obvious errors made either by Officer Hummel or the forensic technician. She acknowledged that there had been an instance in which the TBI's Nashville office had reported a blood alcohol content of 0.24 in a case where the actual content was 0.01.

The prosecutor asked on direct examination if Special Agent Carlisle had ever received a request for independent testing of the blood, but defense counsel objected, arguing that even if the blood were available, the prosecutor's question would impermissibly shift the burden of proof. The trial court ruled that the question was not relevant and stated in front of the jury, "Strike that last question. Move along." The defense subsequently moved for a mistrial. The trial court denied the motion, observing that it had excluded the testimony and further noting that it would have permitted the question on redirect because the Defendant's cross-examination, implying that the TBI's analysis was faulty, had made the testimony admissible.

Both the Defendant and Mr. Brian Carl testified that the Defendant drank approximately four beers between the mid-afternoon and midnight while they watched sports at Mr. Carl's home and at a brewery. Both testified that, shortly before his arrest, the Defendant had undergone knee surgery which would have affected his performance on the field sobriety tests. The Defendant weighed 223 pounds, did not feel impaired, and was "floored" when he saw the results of the TBI's testing. He explained that his erratic driving was due to his attempt to adjust the radio.

The jury convicted the Defendant as charged. The trial court merged the DUI per se conviction into the DUI conviction and imposed a sentence of eleven months and twenty-nine days, with ten days of periodic confinement to be scheduled around the Defendant's work obligations and the remaining time to be served on unsupervised probation. The trial court denied the Defendant's motion for a new trial challenging the trial court's refusal to grant a mistrial, its admission of the blood evidence, and its denial of his motion to dismiss based on the statute of limitations, and the Defendant appeals.

# ANALYSIS

## I. Mistrial

The Defendant argues that it was improper for the prosecutor to ask Special Agent Carlisle whether the Defendant had requested independent testing of the blood and that the trial court erred when it denied his subsequent motion for a mistrial. We conclude that the trial court did not abuse its discretion in denying a mistrial.

"The purpose of declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). A mistrial should be declared only upon a showing of manifest necessity, that is, when a miscarriage of justice would result if the trial were to continue. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008). The appellant bears the burden of establishing manifest necessity. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). In evaluating whether the trial court abused its discretion, the appellate court may consider: "(1) whether the State elicited the testimony, (2) whether the trial court gave a curative instruction, and (3) the relative strength or weakness of the State's proof." *Welcome*, 280 S.W.3d at 222. The decision to grant a mistrial lies within the sound discretion of the trial court. *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003).

The Defendant cites to *State v. Gregg*, 874 S.W.2d 643, 645 (Tenn. Crim. App. 1993), and *State v. Kelly A. Hancock*, No. 01C01-9804-CC-00191, 1999 WL 298219, at *8 (Tenn. Crim. App. May 12, 1999), for the proposition that the question regarding the independent testing of the blood was improper because it was an attempt to shift the burden of proof to the Defendant and to create a "negative inference." In both *Gregg* and *Kelly A. Hancock*, the defendant was questioned regarding steps taken to obtain independent testing of the defendant's blood, and in both cases, this court found the questioning improper. *Gregg*, 874 S.W.2d at 645; *Kelly A. Hancock*, 1999 WL 298219 at *8.

Here, the prosecutor attempted to ask Special Agent Carlisle whether she had received a request for independent testing of the Defendant's blood. As the State concedes on appeal, under *Gregg* and *Kelly A. Hancock*, this question was improper, as its only purpose was to create the inference that the Defendant should have attempted to prove the alcohol content of his blood and that his failure to do so indicated that he believed the testing would be unfavorable to him. However, defense counsel promptly objected to the question, prior to any answer. The trial court correctly concluded that the testimony would not be admissible and stated before the jury that the question would be struck. Accordingly, no improper evidence was admitted; curative action was taken; and

the State's proof, including the blood alcohol test, was strong. *See Welcome*, 280 S.W.3d at 222; *see also State v. Young*, 196 S.W.3d 85, 111 (Tenn. 2006) ("The jury is presumed to follow its instructions."); *Gregg*, 874 S.W.2d 643, 645 (concluding that the error in admitting the testimony about the defendant's independent testing was harmless because the jury was aware of the existence of a second vial of blood and because the State's proof was otherwise strong). We conclude that this isolated question posed by the prosecutor, which the trial court ordered to be struck from the record, did not preclude the jury from forming an impartial verdict and that the trial court did not abuse its discretion in denying the mistrial.

## II. Chain of Custody

The Defendant also challenges the admission of the blood evidence based on the State's failure to establish a proper chain of custody for the evidence. The Defendant urges us to find this case similar to *State v. John Palladin Gibson*, No. E2017-01567-CCA-R3-CD, 2018 WL 4811086, at *5-8 (Tenn. Crim. App. Oct. 3, 2018), *no perm. app. filed*, in which this court concluded that the chain of custody of blood evidence was not properly established. The State, on the other hand, cites to three cases which it contends are analogous and in which this court concluded that the chain of custody was sufficiently established. *See State v. Pascasio Martinez*, No. E2016-01401-CCA-R3-CD, 2017 WL 5613976, at *3 (Tenn. Crim. App. Nov. 21, 2017), *perm. app. denied* (Tenn. Mar. 15, 2018); *State v. Earnest Laning*, No. E2011-01882-CCA-R3-CD, 2012 WL 3158782, at *2 (Tenn. Crim. App. Aug. 6, 2012); *State v. Michael Joseph Arbuckle*, No. M2000-02885-CCA-R3-CD, 2001 WL 1545494, at *3 (Tenn. Crim. App. Dec. 5, 2001).

Tennessee Rule of Evidence 901 requires that physical evidence be authenticated prior to its admission, and authentication requires evidence sufficient "to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). "[I]t is 'well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody.'" *State v. Cannon*, 254 S.W.3d 287, 296 (Tenn. 2008) (quoting *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000)). Evidence should not be admitted if its identity and integrity cannot be demonstrated by chain of custody or other appropriate means. *Scott*, 33 S.W.3d at 760. This requirement is meant to preclude the possibility that the evidence has been subject to tampering, substitution, or mistake. *Cannon*, 254 S.W.3d at 296. The rule requires that each link in the chain be sufficiently established, but "[a]n item is not necessarily precluded from admission as evidence if the State fails to call all of the witnesses who handled the item." *Id.* The State is not required to prove the identity of the evidence beyond all possible doubt or to exclude every possibility of tampering. *Id.* Instead, it must "reasonably establish the identity and integrity of the evidence." *Id.* If the State does not offer sufficient proof of the chain of

custody of the item, it is not admissible unless its identity and integrity are demonstrated by other appropriate means. *Id.* (citing *Scott*, 33 S.W.3d at 760). This court reviews the trial court's ruling regarding whether the chain of custody had been sufficiently established for abuse of discretion. *Id.* at 295. A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning and which causes an injustice to the complaining party. *Id.*

Evidence has been ruled inadmissible when every link in the chain of custody was not established and there was an indication that the evidence had been altered or had been compromised. *See id.* at 298 (there was contradictory proof regarding whether and how the evidence was recovered from the victim); *Scott*, 33 S.W.3d at 760-61 (the evidence had been mounted on slides and there was no testimony explaining this alteration in the condition of the evidence); *State v. Reginald Bernard Coffee*, No. M2016-01834-CCA-R3-CD, 2017 WL 3836023, at *14 (Tenn. Crim. App. Aug. 31, 2017), *perm. app. denied* (Tenn. Jan. 17, 2018) (the State did not introduce proof that the envelope, which had been opened multiple times and passed through the hands of multiple unidentified individuals, was sealed when received by the forensic analyst).

Likewise, this court has excluded evidence when a link in the chain of custody did not testify and the State did not present testimony regarding normal procedures that would have been employed to ensure the integrity of the evidence. *John Palladin Gibson*, 2018 WL 4811086, at *8; *Reginald Bernard Coffee*, 2017 WL 3836023, at *15; *State v. Michael R. Anderson*, No. M2008-01230-CCA-R3-CD, 2009 WL 856903, at *4-5 (Tenn. Crim. App. Mar. 31, 2009) (the chain of custody was inadequately established when the State failed to present evidence regarding when or by whom the blood test was sealed and failed to present evidence regarding how the kit was labeled or identified to prevent mistake).

The Defendant asserts that this case is indistinguishable from *John Palladin Gibson*, in which a majority of a panel of this court concluded that the State failed to show a proper chain of custody because of the absence of any evidence regarding "the conditions in which the evidence was kept between [law enforcement's] delivering it to an unidentified person from the Forensics Department and the TBI Laboratory's receipt of it from the Sheriff's Department." *John Palladin Gibson*, 2018 WL 4811086, at *7. In *John Palladin Gibson*, the defendant's blood was collected in the presence of an officer who sealed the evidence and gave it to the Knox County Sheriff's Department Forensic Department. *Id.* at *6. The TBI laboratory received the evidence six days later in a sealed kit, and the chain of custody was established from that point forward. *Id.* Distinguishing cases in which the chain of custody was found to have been established, this court concluded that the absence of evidence regarding the "usual procedures for

storing, securing, and transporting evidence" from the Sheriff's Department to the TBI was fatal. *Id.* at *8.

*John Palladin Gibson* relied in part on *Reginald Bernard Coffee*, in which this court likewise concluded that the chain of custody had not been properly established because not every "link" in the chain testified and the State failed to introduce evidence regarding standard procedures for storing the evidence. 2017 WL 3836023, at *15. The court in *Reginald Bernard Coffee* found the lack of testimony establishing the standard procedures for storing the evidence determinative. *Id.* Although the court stated that there was no evidence of tampering, it also cited to the fact that there was no testimony regarding the identities or positions of at least two people who handled and signed the evidence, that there was no testimony regarding the whereabouts of the evidence between its collection and its analysis, that there was no testimony that the evidence was sealed when the forensic scientist received it, and that the envelope containing the evidence had been taped and opened multiple times. *Id.* at *14 (concluding the error in admitting the evidence was harmless because other evidence supported the conviction).

The dissent in *John Palladin Gibson* argued that the chain of custody was sufficiently established and distinguished *Reginald Bernard Coffee* on the basis that there was reason to doubt the integrity of the evidence in *Reginald Bernard Coffee*, as the envelope containing the evidence had been opened multiple times and the evidence had passed through the hands of multiple witnesses who could not be identified. 2018 WL 4811086, at *11-12 (Easter, J., dissenting); *see Michael Joseph Arbuckle*, 2001 WL 1545494, at *3 (the evidence was admissible when there was no testimony regarding the evidence between the time it was left in an "evidence locker" and its analysis at the TBI but there was no indication of tampering, loss, substitution, mistake, or other irregularities, and the defendant's challenge was to the lack of testimony from the TBI forensic technician and phlebotomist).

Other cases have concluded that the chain of custody was adequately established when the State did not present testimony from every link in the chain but when there was testimony that the evidence was kept in a secure manner and that there was no indication of tampering. *See, e.g. State v. Randy Timothy Jones*, No. M2017-00769-CCA-R3-CD, 2018 WL 1182573, at *5-6 (Tenn. Crim. App. Mar. 7, 2018) (the chain of custody was sufficiently established by the trooper's testimony that he witnessed the collection of the blood, labeled and sealed it, put it into a locked evidence drop box, and the agent's testimony that the forensic technician received the box and that it was sealed and gave no indication of tampering), *no perm. app. filed*; *State v. Kevin Allen Fleming*, No. E2016-01746-CCA-R3-CD, 2018 WL 1433503, at *15-17 (Tenn. Crim. App. Mar. 22, 2018), *perm. app. denied* (Tenn. July 18, 2018) (the chain of custody was adequately established when the trooper observed the collection of the blood, sealed the kit, and took it to a

secure evidence locker, and when the TBI agent testified regarding the integrity of the evidence once it was placed into the TBI drop box); *State v. Jaquan Gathing and Prince Parker*, No. W2016-02076-CCA-R3-CD, 2018 WL 486001, at \*8 (Tenn. Crim. App. Jan. 19, 2018), *perm. app. denied* (Tenn. May 17, 2018) ("[T]he chain of custody may be adequately established without the testimony of the receiving TBI technician where other testimony demonstrates that proper procedure was followed and there was no indication that tampering had occurred."); *Pascasio Martinez*, 2017 WL 5613976, at \*3 (testimony that the evidence was stored and received in a secured manner, that a notation would have been made of any tampering, and that the samples appeared undisturbed was sufficient); *State v. Zacheriah Holden*, No. M2010-00811-CCA-R3-CD, 2013 WL 871326, at \*22-23 (Tenn. Crim. App. Mar. 8, 2013) (the chain of custody was established by an agent testifying regarding the procedures for receiving evidence at the TBI although the forensic technician did not testify); *Earnest Laning*, 2012 WL 3158782, at \*3 (the chain of custody was established by testimony regarding the collection of the blood, the fact that it was sealed in a box which would have made any tampering evident, its storage in a secure location, and its receipt by the TBI in a condition which indicated no alteration or tampering); *State v. Willie R. Dyer*, No. M2007-02397-CCA-R3-CD, 2008 WL 4949266, at \*3-4 (Tenn. Crim. App. Nov. 19, 2008) (testimony regarding security of police department's evidence locker and the TBI's procedures for receiving evidence established the integrity of the evidence even without the testimony of the evidence custodian and forensic technician).

Here, Officer Hummel testified that she watched the phlebotomist draw the Defendant's blood and place it into a kit. She sealed the kit into a box and put the box into the "evidence box for blood collection" at the Knox County Detention Facility.

Special Agent Carlisle testified that the Defendant's blood was received through a secure drop box. She stated that under TBI procedure, a forensic technician would retrieve the blood evidence, refrigerate it, and later open the sealed box to inventory the contents, assign a laboratory number, affix a barcode, and destroy the box. The evidence would then be refrigerated until Special Agent Carlisle was ready to analyze it. Over the Defendant's objection, the trial court permitted an internal chain of custody report to be entered into evidence.

Special Agent Carlisle testified that she received the tubes of blood with the submittal form and would note any "discrepancies between the two, anything like that." While she was not asked whether the box was sealed when it arrived, she identified the toxicology request form signed by Officer Hummel and stated it was "located inside the sealed kit." The tubes were labeled with a barcode containing the laboratory number and also labeled with the Defendant's name and birthdate. She testified that the factory labels were attached with an adhesive and could not be removed intact, but she could not speak

to hospital labels. She did not testify which label contained the identifying information. The defense asked Special Agent Carlisle multiple times about the possibility that Officer Hummel could have switched the samples while conducting two blood draws, and Special Agent Carlisle confirmed that she could not testify to the integrity of the sample prior to its receipt by the TBI. *See Kevin Allen Fleming*, 2018 WL 1433503, at *17 (noting that the fact that blood was also drawn from passengers in the defendant's vehicle "does not call into question the authenticity of the Defendant's blood evidence" when the chain of custody was otherwise established). She also confirmed that she was not present when the evidence was received and processed by the forensic technician. She testified that any mistakes made by either Officer Hummel or the forensic technician were "not obvious to [her] when [she] received the sample."

Accordingly, as in *John Palladin Gibson*, the State did not offer testimony regarding the handling of the evidence or regarding the normal procedures for handling evidence between the time Officer Hummel delivered it to the evidence box at the Knox County Detention Facility and its receipt by the TBI. Nevertheless, we agree with the reasoning of the dissent in *John Palladin Gibson* and conclude that the remaining testimony scantly but sufficiently established the identity and integrity of the evidence. According to Officer Hummel and the video evidence, the Defendant's blood was collected and sealed so that any tampering would be evident. Special Agent Carlisle's testimony established that it was received by TBI inside "the sealed kit," that the tubes themselves were labeled with the Defendant's name and birthdate, and that she did not note any irregularities with the evidence when she received it. While it certainly would have been better practice for the State to make each link in the chain of custody explicit, we conclude that the testimony that the evidence was sealed after it was collected, the video showing that it was sealed, and the testimony that it was received in a "sealed kit" with no indication that it had been handled or stored improperly "reasonably establish[ed] the identity and integrity of the evidence." *Cannon*, 254 S.W.3d at 296. While we caution the State that it must introduce proof sufficient to establish the integrity of the evidence, we cannot say that the trial court abused its discretion in admitting the blood test.

### III. Validity of the Arrest Warrant

The Defendant contends that the entire proceedings against him are void because the circumstances of the issuance of the arrest warrant indicate that the magistrate was acting as a rubber stamp. The State argues that the Defendant has waived this issue by failing to include a transcript from the hearing on his motion to dismiss but that the trial court in any case correctly concluded that the valid indictment cured any defect in the arrest warrant. *But see State v. David Allen Jackson*, No. E2015-02033-CCA-R9-CD, 2016 WL 4158168, at *8 (Tenn. Crim. App. Aug. 5, 2016) (concluding that an indictment

filed after the limitations period does not cure the defects in a flawed warrant). The trial court denied the motion to dismiss, finding that the arrest warrant was facially valid and at most voidable.

The Defendant argued in his motion to dismiss that he was not indicted until more than a year after his misdemeanor offense, that the arrest warrant issued the day of the offenses was void, and his prosecution was therefore not timely commenced. The record reflects that the motion was heard on two separate days, that the parties disputed whether the magistrate could be compelled to testify, and that the parties agreed to ask the magistrate questions and to stipulate the answers. The trial court's written order did not reference the stipulation, which was undated and filed in the record after the denial of the motion. The court found that there were no disputed facts before it, and it denied the motion to dismiss based on the fact that, while the other arrest warrants in the case had been dismissed, the arrest warrant at issue was facially valid and at most voidable. The trial court found that the arrest warrant was not void, had not been challenged prior to the indictment, and that the proceedings were the result of a valid indictment. The State asserts that failure to include the transcripts amounts to waiver.

The appellant has the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In the absence of an adequate record, we presume that the trial court's judgments were correct. *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993).

Although the Defendant stated at oral argument that no proof was introduced at the hearings, we nevertheless observe that the hearings are pertinent to our review. Parties are bound on appeal by the issues as they were presented to the lower courts. *State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016) ("It is well-settled that a defendant may not advocate a different or novel position on appeal."); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). Furthermore, even when no factual evidence is presented at a hearing, parties may be bound by the arguments advanced and any concessions made at the hearing by their counsel. *See State v. Cecil Glen Dobbs, Jr.*, No. E2017-00437-CCA-R3-CD, 2017 WL 5952932, at *2 (Tenn. Crim. App. Nov. 30, 2017); *State v. Jason L. Holley*, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *3-4 (Tenn. Crim. App. Oct. 25, 2005). We conclude that the transcripts are necessary for review, and we presume the trial court's judgments are correct in their absence. *See Richardson*, 875 S.W.2d at 674.

Nevertheless, aside from any waiver, the record before us clearly demonstrates that the State timely commenced prosecution and that the Defendant's motion to dismiss was properly denied. The prosecution of the misdemeanor at issue must be commenced within twelve months after the commission of the offense. T.C.A. § 40-2-102(a) (mandating that prosecutions for misdemeanors, with certain exceptions, be commenced within twelve months of the offense); *see* T.C.A. §§ 55-10-401, -402(a)(1)(A) (2015) (first offense DUI is punishable by no more than eleven months and twenty-nine days in confinement); T.C.A. § 39-11-110 (offenses punishable by less than one year of confinement are misdemeanors). Prosecution may be commenced by:

> finding an indictment or presentment, the issuing of a warrant, the issuing of a juvenile petition alleging a delinquent act, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense….

T.C.A. § 40-2-104.

The record indicates that the Defendant was bound over to the grand jury on the DUI charges on July 18, 2016, within one year of the offense. At oral argument, the Defendant, citing *State v. Ferrante*, argued that the timely bind-over did not act to commence proceedings but was instead a proceeding emanating from a void warrant and accordingly, itself invalid. *See State v. Ferrante*, 269 S.W.3d 908, 915 (Tenn. 2008) (citing *State v. Wilson*, 6 S.W.3d 504, 507 (Tenn. Crim. App. 1998) for the proposition that a void warrant invalidates all subsequent proceedings emanating from it). The State countered that the arrest warrant was only voidable.

In *Ferrante*, the defendant had been arrested for DUI and the affidavit of complaint was void *ab initio* because the signatory was incapable of making a determination regarding probable cause. *Ferrante*, 269 S.W.3d at 913. The Tennessee Supreme Court ruled that the defendant's numerous appearances before the court did not serve to commence prosecution because they were not in response to an offense with which he had been validly charged. *Id.* at 915. However, *Ferrante* addressed only commencement of prosecution by personal appearance, not binding over after a determination of probable cause. *See* Tenn. R. Crim. P. 5.1(b).

Directly on point is *State v. McCloud*, in which this court rejected the defendant's argument that a defective arrest warrant acted to void the subsequent timely bind-over. 310 S.W.3d 851, 860-61 (Tenn. Crim. App. 2009). In *McCloud*, we noted that "[t]he defendant's argument overlooks entirely the probable cause finding of the general

sessions court, which occurred within the statute of limitations period." *Id.* at 860; *see* Tenn. R. Crim. P. 5.1(b) ("When the magistrate at a preliminary hearing determines from the evidence that an offense has been committed and there is probable cause to believe that the defendant committed it, the magistrate shall bind the defendant over to the grand jury...."). The opinion distinguished *Ferrante* because in *McCloud*, "there was a judicial finding of probable cause and a statutorily sufficient commencement of the prosecution" within the limitations period through the binding over of the defendant. *McCloud*, 310 S.W.3d at 861; *see State v. Stephen James Thompson*, No. M2009-02122-CCA-R3-CD, 2010 WL 3489162, at *3 (Tenn. Crim. App. Aug. 25, 2010) (the State timely commenced prosecution by binding the defendant over to the grand jury prior to the limitations period even though no valid arrest warrant issued).

Accordingly, even if we were to conclude that the argument is not waived for failure to include the transcripts, the record clearly establishes that prosecution was timely commenced by binding the Defendant over within twelve months of the offense. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 13 -