IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 21, 2026

## STATE OF TENNESSEE v. RICKY BURNETTE

**Appeal from the Criminal Court for Knox County**
**No. 124665   Steven W. Sword, Judge**

———————————————————————

## No. E2025-00625-CCA-R3-CD

———————————————————————

Defendant, Ricky Burnette, was convicted by a Knox County jury of theft between $2,500 and $10,000, a Class D felony, and sentenced to twelve years' incarceration as a career offender.  In this direct appeal, he contends: (1) the trial court erred when it determined that his convictions from 1991 were admissible for impeachment purposes; (2) the trial court improperly limited the testimony of a witness concerning an ongoing investigation, (3) the trial court abused its discretion in permitting testimony regarding the contents of a stolen vehicle, (4) the trial court erred in failing to give a curative instruction after a witness referred to Defendant's "classification," (5) the trial court improperly bolstered the State's expert witness by asking a hypothetical question, (6) the trial court improperly sustained an objection to the cross-examination of a State's witness, (7) the trial court improperly instructed the jury on flight, and (8) the cumulative effect of these alleged errors entitles him to relief.  Upon a review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and TIMOTHY L. EASTER, J., joined.

Sherif Guindi, Knoxville, Tennessee, for the appellant, Ricky Burnette.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha M. Fitzgerald and Molly Morrow, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

This case arose when Defendant, while in custody of the Monroe County Jail, was working outside the Justice Center with the county maintenance department as part of an inmate work program and escaped by taking a truck owned by a maintenance employee. Defendant was found the next day in Knox County, wearing his jail-issued uniform and in possession of the maintenance employee's truck. He was taken into custody by a Knox County Sheriff's deputy, without incident. Drug paraphernalia was found inside the truck at the time of the arrest. Defendant denied ownership of the paraphernalia but admitted to taking the truck without the employee's consent. He testified at trial that he fled custody out of what he claimed was a legal necessity to expose alleged corruption within the Monroe County Jail.

On May 16, 2023, the Knox County Grand Jury entered a true bill charging Defendant with theft valued at $2,500, or more, but less than $10,000, and unlawful possession of drug paraphernalia. On August 21, 2024, a jury convicted Defendant of the theft charge and acquitted him of the paraphernalia charge.

*Pretrial Motions*

Prior to trial, Defendant moved to exclude any reference to firearms the victim alleged were in his truck at the time it was taken. He argued that because the grand jury did not indict him for unlawful possession of a firearm, despite his acknowledgment that he has sufficient prior convictions to qualify as a career offender, the grand jury must not have believed firearms were present in the vehicle. On that basis, he contended the State should not be allowed to introduce proof of firearms at trial.

In denying the motion, the trial court explained that lawful possession of a firearm is not inherently criminal, that the grand jury's decision not to pursue a separate weapons charge had no bearing on whether the firearms were part of the truck's contents, and that the State was entitled to prove what was inside the vehicle as stated in the indictment. When defense counsel asked whether the fact that the guns were never recovered would alter the trial court's ruling, the trial court responded that it would not. The trial court explained such circumstances affected the weight of the evidence, not its admissibility.

The State filed a "Notice of Intent to Seek Enhanced Punishment" and sought to introduce seven felony convictions for impeachment should Defendant testify: three aggravated robbery convictions, one robbery conviction, one Class D felony theft conviction, and two Class E felony theft convictions. The judgments for the three

aggravated robbery convictions and the robbery conviction were entered on May 16, 1991. The judgments for the two Class E felony theft convictions were entered in September 2007, and the judgment for the remaining Class D felony theft conviction was entered in December 2008.

At a pretrial hearing, Defendant argued that any probative value of his prior convictions was substantially outweighed by the danger of unfair prejudice because the jury might discount his testimony largely on his status as a convicted felon. Alternatively, Defendant offered to stipulate that he was a convicted felon without disclosing the nature or number of the convictions should he testify. The State argued that all seven convictions had "a direct bearing" on Defendant's credibility and were therefore relevant for impeachment.

The trial court addressed the issue under Rule 609(b) and found that the State had given sufficient advance notice by filing its intent in May 2023, "well over a year before" trial. The trial court concluded that in the interest of justice, the probative value of the four 1991 convictions – three aggravated robberies and one robbery – was not substantially outweighed by the danger of unfair prejudice. The trial court reasoned that although aggravated robbery and robbery are violent offenses, they also qualify as crimes of dishonesty "because they involve the taking of property from another person."

The trial court observed that in most Rule 609 cases, the charged offense is more serious than the prior convictions, but not "in this case." The trial court explained that Defendant's recent theft convictions posed a greater risk of unfair prejudice than the 1991 robbery-related convictions because the instant case also involved theft:

> What we do have is a charge of theft, which is essentially saying what [] [D]efendant was convicted of in the 2007 and 2008 charges. So those, actually, in my mind, have a little bit higher danger of unfair prejudice to the defense where the jury might think that, well, he, he'd stolen stuff before so he's stolen again. And I understand robbery has within an element of taking as well, that's what makes it a crime of dishonesty. But it's different in this case. It almost stands on its head on what would be more prejudicial. To me, I believe the thefts would be more prejudicial to [] [D]efendant than the robberies. So the question becomes, in this particular case, is the danger of unfair prejudice for any or all of these because it's so much that the probative value isn't substantially outweigh – or doesn't substantially outweigh that prejudicial effect.

The trial court held that the probative value of the three aggravated robbery convictions and the robbery conviction substantially outweighed the danger of unfair

prejudice and were admissible for impeachment.  The trial court excluded the three theft convictions because their similarity to the charged offense increased the danger of unfair prejudice and their probative value was diminished once the robbery convictions were admitted.  The trial court rejected Defendant's request to stipulate only that he was a convicted felon, because a generic stipulation would not provide the jury with the ability to evaluate his credibility in the same way as evidence of specific convictions.  The trial court emphasized that the nature of the aggravated robbery and robbery convictions was relevant to the jury's evaluation of Defendant's behavior.  The trial court noted that the State could agree to a stipulation if it wished; however, if the State declined, it would be permitted to question Defendant about the robbery convictions.

Prior to trial, Defendant served a subpoena on Tennessee Bureau of Investigation ("TBI") Special Agent Colton Brown seeking testimony regarding a TBI investigation of the Monroe County Jail.  The State moved to quash, or, alternatively, to modify the subpoena arguing that Defendant sought information about a separate, ongoing investigation, not at issue in his case, and as a non-party, was not entitled to such information under Tennessee Rule of Criminal Procedure 16.  The State also argued that the requested testimony was precluded under Tennessee Code Annotated section 10-7-504(2)(A), which exempts TBI investigative files from public disclosure under the Public Records Act.  The State requested the motion be quashed in its entirety, or, alternatively, that Agent Brown's testimony be limited to non-privileged matters.

At an August 19, 2024 hearing, defense counsel clarified that the subpoena sought only Agent Brown's testimony, not records, and argued his testimony was essential to confirm the existence and scope of the TBI's investigation, Agent Brown's interview of Defendant, and any corroboration of Defendant's statements.  The State maintained that information on TBI investigations remained not discoverable under Rule 16 and exempt from public disclosure and further argued that the investigation of the jail and any related statements were irrelevant to the theft charge.

The trial court granted the motion to quash as to any records but denied it in part with respect to Agent Brown's testimony.  In doing so, the trial court balanced the TBI's interest in maintaining the confidentiality of its investigative materials against Defendant's constitutional right to present a defense.  Because the necessity defense required proof that Defendant "reasonably believed [his] conduct was immediately necessary to avoid imminent harm," the trial court found that limited testimony confirming the existence of an ongoing investigation and Defendant's cooperation with Agent Brown was relevant to the reasonableness of that belief.  *See* T.C.A. § 39-11-609.  Citing *State v. Brown*, the trial court concluded that, in some circumstances, evidentiary and confidentiality rules must yield to a defendant's right to present a defense.  Accordingly, the court permitted Agent

Brown to testify to non-privileged matters supporting the necessity defense and gave specific guidance on what matters could be addressed:

> The defense will be limited to asking the agent if there is an ongoing investigation about unlawful behaviors in the Monroe County jail, if the scope of the investigation involved the timeframe in which [] [D]efendant was incarcerated in the Monroe County jail, and whether or not [] [D]efendant provided information about the issues being investigated.

*Trial*

At trial, Timothy Stedred,[1] an employee in the Monroe County Maintenance Department, testified that on Friday, November 18, 2022, his truck, a 1997 Ranger, was missing when he finished his shift at the Justice Center. Mr. Stedred stated that he either left his keys in his lunchbox, which he placed on a table outside the Justice Center, or in his jacket inside the truck. There were several items in his truck at the time of the theft including a Carhartt jacket, a toolbox, and two firearms, a Keltec nine-millimeter pistol and a Phoenix Arms HP22 semi-automatic pistol. He kept his guns in his truck because weapons were prohibited inside government buildings like the Justice Center. He recalled putting the Keltec nine-millimeter between the seats and the Phoenix Arms HP22 was on the dash. Mr. Stedred testified that both guns were loaded.

Defendant became a suspect after he failed to return from a smoke break while working outside that day as part of the Monroe County Maintenance inmate work program. Mr. Stedred recalled that Defendant had been assigned to work alongside Timothy Stedred's supervisor, Mark Woods, who last saw Defendant just before he stepped away. When Defendant could not be located, law enforcement, including the Madisonville Police Department, began searching for him, for Mr. Stedred's missing truck, and for the two firearms that had been inside the truck. Officers concluded that Defendant had fled the Justice Center in Mr. Stedred's truck. Shortly thereafter, authorities received a license-plate hit on Mr. Stedred's vehicle on Highway 58 in Roane County.

The next morning, Mr. Stedred recovered his truck after the sheriff's department[2] notified him it had been found in the parking lot of a Dollar Store off Chapman Highway in Knoxville. When he arrived, his Carhartt jacket was still inside, but both firearms were missing. He also noted the trip meter. He had reset it upon purchasing gas and recalled that it read sixty miles when he drove to the Justice Center the previous day. When he

---

[1] The victim's last name is spelled differently in the indictment. We will refer to his last name as he spelled it in his testimony at trial.

[2] Mr. Stedred did not know which county sheriff notified him, Monroe or Knox County.

recovered his truck at the Dollar Store, it registered 260 miles. Mr. Stedred denied he gave Defendant permission to drive or take possession of the truck or any of the items inside it. He also denied the drug paraphernalia found in his truck belonged to him.

Mr. Stedred identified his truck on the arresting officer's body camera video and testified to its condition and value. He stated that, despite its age, he "wouldn't take $2,500 for it today" and would instead ask for $3,500. He acknowledged the taxable amount was listed at $500 in the vehicle registration, but maintained his higher valuation based on the truck's reliability and condition. He estimated the value of the two firearms at about $500 total. Mr. Stedred confirmed the sliding rear window had been replaced with plexiglass, which had some flexibility and could "possibly" be pushed inward. He was not aware of corruption in the Monroe County Jail.

On cross-examination about where the inmates were working, Mr. Stedred replied that he did not recall due to the volume of work orders and the passage of time. The following exchange, which forms an issue on appeal, then occurred:

| | |
|---|---|
| Defense counsel: | Well, but, but there weren't any like sheriff deputies or people from the jail – |
| The victim: | No. The fact that [Defendant] should have never been out because his classification – |
| Defense counsel: | Whoa, whoa, whoa, whoa, whoa, whoa, stop. Objection. Your Honor? |
| The Court: | Yeah. Strike, strike the last answer. Go ahead. |
| Defense counsel: | Okay. |

No request for further instruction was made by the defense. Mr. Stedred continued testifying under cross-examination and revealed that typically no more than four inmates worked on a maintenance assignment at one time. He acknowledged there were other inmates working at the Justice Center that day, but he could only recall Defendant because he was working with Mr. Woods.

Gary Viles, the owner of Viles Automative in Knoxville, testified without objection as an expert in general vehicle valuation. Mr. Viles inspected Mr. Stedred's truck immediately before testifying and reviewed photographs of the truck. He described the truck as "a good vehicle" in "rough condition" and testified that based on its condition, he would have priced it at $2,800 on his lot, confirming that its value exceeded $2,500.

On cross-examination, Mr. Viles testified that he considered the replacement of the sliding rear window with plexiglass into his valuation, explaining that the plexiglass window contributed to the truck being categorized as "a rough vehicle." He learned for the first time that the engine had been replaced and explained that a lower-mileage engine could increase its value. On redirect, he testified that the replacement of the engine did not change his opinion that the value of the truck was more than $2,500.

Following the conclusion of his testimony on redirect examination, the trial court asked Mr. Viles a hypothetical scenario about the timing of purchasing a car for his daughter:

| The Court: | All right. One more question for you. Hypothetically speaking, if a fellow needed to buy his daughter a Subaru, should he wait until like December or like next spring? |
| --- | --- |
| Mr. Viles: | It depends on the daughter, if she's going to wear you out or not. |
| The Court: | She's all right, for now. Well, hypothetically, that's saying right now. So do you think the used prices – *and, and this is irrelevant to this, folks*. It really is just a question I'm asking. Do you think the prices are going to go down? |
| Mr. Viles: | Well, I would think with the interest rates starting to go back down I think – |
| The Court: | Okay. So the interest rate's going to control it more than, that the, the market and supply. All right. Thank you, Mr. Viles. Have a good day, sir. |
| | All right. The next witness, General. |

(Emphasis added).

Knox County Sheriff's Deputy, Sergeant Randall Williams, arrested Defendant on November 19, 2022, in the parking lot of a Dollar Store. His body camera footage of the arrest was played earlier during Mr. Stedred's testimony. Sergeant Williams testified that he received simultaneous alerts from a license plate reader, rear-mounted cameras, and the United States Marshals Task Force that Mr. Stedred's truck was seen on Chapman Highway in Knoxville. Defendant was seen traveling with a woman. Acting on those alerts, Seargeant Williams patrolled the highway, located the truck, and found Defendant

alone inside, wearing Mr. Stedred's Carhartt jacket. Sergeant Williams inventoried the truck, but the firearms were not inside and were never recovered.

On cross-examination, the State objected during the following line of questioning:

Defense counsel: Okay. Okay. And as a, I mean, as, as a police officer, well, did you get training of weapon safety?

Sgt. Williams: Yes, sir.

Defense counsel: Okay. Do you think it's advisable to leave two firearms in a car or truck that has a plexiglass, plexiglass window that, that can be, that can be pushed in?

The State: Going to object, Your Honor.

The Court: Yeah. I'm going to sustain to the relevance. Whether it's advisable or not, that's . . . not really relevant.

Defense counsel: Okay.

No offer of proof was made, and Sergeant Williams was questioned about the contents of the truck, including the presence of drug paraphernalia. The State then rested its case.

Before Defendant began his proof, he objected to the State's use of his prior convictions for impeachment on the grounds that all the convictions were more than ten years old. The trial court stood on its previous ruling and noted that Defendant's necessity defense placed his mental state and his credibility at the center of the case. In his opening statement, defense counsel argued that Defendant lacked the intent to deprive the victim of his truck.

The defense then called as its first witness, Special Agent Brown, a criminal investigator with the TBI. Prior to Agent Brown's testimony at trial, the trial court reminded the parties of the previously imposed limits and heard arguments on whether Agent Brown could clarify that the TBI investigation concerned staff misconduct rather than inmate misconduct at the Monroe County Jail. Over the objection of counsel for the TBI, the trial court granted Defendant's request and allowed the defense to establish that the investigation involved jail staff, while still prohibiting any details about the underlying allegations.

Agent Brown testified and confirmed he led an investigation involving staff at the Monroe County Jail, that the timeframe of the investigation included the time Defendant was an inmate, and that he interviewed Defendant for the investigation. Agent Brown testified that Defendant spoke to a TBI agent in June 2023, and he personally interviewed Defendant in February 2024. Both interviews occurred after Defendant was charged in the present case. He also confirmed that the investigation "ha[d] nothing to do with the maintenance department" or Mr. Stedred.

Defendant testified and acknowledged that he had three prior convictions for aggravated robbery and one prior conviction for robbery from 1991. Defendant explained that he and "a bunch of friends" robbed two or three gas stations, stating that no weapons were used and no one was harmed. Defendant's role was to scope out the gas station to see how many employees were present. He testified that he pled guilty because he was, in fact, guilty.

Defendant testified that he became aware of what he believed to be corruption in the Monroe County Jail in April 2022. He learned that a jail employee, Officer Harold,[3] had been supplying a fellow inmate with containers of smokeless tobacco, each containing ten to twelve cans. The inmate would then break the containers down and sell the cans individually for $50 each to repay the officer through her cash-transfer account. The inmate showed Defendant a sticky note demanding $1,500 as payment for the tobacco products Officer Harold had smuggled in for the inmate to sell, but which he could not afford to pay.

Defendant reported the note to the jail captain, who photographed it and told him he would "take care of it." Three days later, however, Officer Harold approached Defendant about distributing contraband inside the jail, assuring him he would not get in trouble because she would be the only officer on duty. Defendant initially resisted but eventually agreed to an arrangement. Defendant testified that the situation quickly escalated as Officer Harold brought in additional contraband, including drugs and marijuana vape pens. According to Defendant, this became a regular pattern that continued for five or six months – "a couple of times through the week and every other weekend when she worked" – during which Officer Harold supplied the contraband and directed him to deliver it to her "trusted" contacts in each of the jail's five pods.

Defendant explained that Officer Harold facilitated the movement of contraband by either smuggling it into the jail herself or leaving it in her car and giving him her keys under the pretense of "clean[ing] out her car." Because she was "the one in charge," she

---

[3] The record reflects two different spellings of the jail officer's first name – "Tony" and "Cody." For clarity and consistency, we will refer to her as Officer Harold.

controlled his reentry into the jail, monitored him on camera, and prevented other officers from searching him, even though inmates returning from outside the jail were normally subjected to a full strip search.

Defendant also described witnessing misconduct by Corporal Ava Hensley, whose boyfriend was an inmate. He testified that he saw Corporal Hensley alone in a lieutenant office with the door slightly ajar, and shortly afterward observed another officer escorting the inmate to the same office under the pretense of using the phone. When Defendant asked Officer Harold about it, she told him she expected to make $200 for arranging the meeting. Defendant stated that he confronted Officer Harold about the situation becoming "out of control." He insisted that cameras captured the inmate being escorted to the office.

Defendant testified that he ultimately fled because he wanted to report the corruption to the TBI and did not want to use the jail phones which were monitored. He stated he "couldn't take it no more" working with Officer Harold, and the first opportunity to flee came on the day he learned he would no longer be working in the maintenance department. Seeing keys on a table, he "got in the truck and left," intending to reach the TBI in Knoxville or "the news" to expose what was happening in the jail. He denied intending to deprive Mr. Stedred of his truck, acknowledged he did not have permission to take it, and testified that he planned to return it. Defendant stated he fled because he was scared, overwhelmed, and wanted to get away from "a bunch of police that's crooked" who were forcing him to "commit[] crimes" by delivering contraband to inmates.

Defendant testified that he picked up a woman on Lovell Road who asked for a ride to Chapman Highway. He asked her to buy him a pair of pants so he could change out of his orange jail pants before attempting to speak with a news outlet, explaining that "it's going to be obvious walking around in orange pants." The woman was inside the Dollar Store buying Defendant a pair of sweatpants when Sergeant Williams arrived. He surrendered to Sergeant Williams without resistance.

Based on the proof, the jury convicted Defendant of Class D felony theft as charged and acquitted him of possession of paraphernalia. T.C.A. §§ 39-14-103(a); -105(a)(3). At sentencing, based on the certified judgments of six prior felony convictions, the trial court found Defendant to be a career offender and imposed the maximum sentence in the applicable range, twelve years. T.C.A. §§ 40-35-108(a)(3); 40-35-108(c); 40-35-112(c)(4).

In his motion for new trial, Defendant challenged the admission of his 1991 convictions for impeachment under Rule 609(b) and claimed the trial court erred in limiting the testimony of Agent Brown. In his amended motion for new trial, Defendant raised the same two issues and added that the trial court erred in denying his motion in limine to

exclude testimony regarding firearms in Mr. Stedred's truck and by instructing the jury on flight. For the first time, he also alleged the trial court erred by "not offering a corrective instruction to the jury after defense counsel objected" to Mr. Stedred's statement that Defendant "should have never been out because of his classification," the trial court erred by asking Mr. Viles a question "not related to this matter," and the trial court erred by sustaining the State's objection to defense counsel's question to Deputy Williams on the "advisability of leaving firearms in a truck with a plexiglass window." The trial court denied the motion for new trial. It is from this judgment Defendant appeals.

**Analysis**

### I. Defendant's Prior Convictions – Tenn. R. Evid. 609

Defendant contends the trial court improperly admitted his 1991 convictions for impeachment because the trial court made no findings addressing the specific facts and circumstances required for the balancing test under Tennessee Rule of Evidence 609(b). He further asserts that the presentence report contained more recent, less serious convictions the State could have used instead.

The State responds that the trial court properly allowed impeachment of Defendant with his 1991 aggravated robbery and robbery convictions because the trial court made the required findings under Rule 609(b)(3). Alternatively, the State contends any error in admitting the prior convictions is harmless beyond a reasonable doubt because the jury received a limiting instruction. We agree with the State.

This court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes for an abuse of discretion. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). A trial court "abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *State v. Reynolds*, 635 S.W.3d 893, 921 (Tenn. 2021).

Impeachment by prior convictions is governed by Rule 609 of the Tennessee Rules of Evidence, which allows the State to challenge a defendant's credibility on cross-examination using qualifying prior convictions, provided the rule's conditions and procedures are met. Tenn. R. Evid. 609(a). The conviction must be for a crime (1) punishable by death or incarceration in excess of one year, or (2) involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Rule 609 also requires the State to provide "reasonable written notice" before trial identifying the specific convictions it intends to use for impeachment. Tenn. R. Evid. 609(a)(3). Before allowing use of any prior conviction, the trial court must determine that its probative value on credibility outweighs any unfair

prejudicial effect on the substantive issues. *Id.* The trial court must make this ruling before the defendant testifies, and if the court finds the conviction admissible, the defendant is not required to testify at trial in order to preserve a challenge to that ruling on appeal. *Id.*

Generally, convictions that are ten years old or more cannot be used for impeachment. Tenn. R. Evid. 609(b). However, such a conviction may be used if the State gives "sufficient advanced notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence" and the trial court finds "in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." *Id.*

When weighing the probative value of the impeaching conviction against its prejudicial effect, trial courts should engage in a two-prong analysis. In making this balancing analysis, trial courts "must focus particular attention on: (1) the relevance of the impeaching conviction to the issue of credibility; and (2) the similarity between the charged offense and the impeaching conviction." *State v. Herron*, 461 S.W.3d 890, 906 (Tenn. 2015); *State v. Lankford*, 298 S.W.3d 176, 180-81 (Tenn. Crim. App. 2008).

Because the prior convictions were more than ten years old, the trial court addressed the issue under Rule 609(b). The State provided sufficient advance notice of its intent to use the 1991 convictions, established the existence of the convictions by clear and convincing evidence through judgments of conviction, and the trial court made findings explaining why those convictions were more probative of credibility and less prejudicial than the more recent theft convictions. Tenn. R. Evid. 609(3); *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999) (recognizing that when an impeaching conviction is the same as the crime for which the defendant is being tried, the unfair prejudicial effect on the substantive issues greatly increases); *see also State v. Roberts*, 703 S.W.2d 146, 147 (Tenn. 1986).

Here, the trial court stated on the record how the impeaching convictions were relevant to Defendant's credibility, *Lankford*, 298 S.W.3d at 181 (quoting *Mixon*, 983 S.W.2d at 674), and explained that it admitted the aggravated robbery convictions – but not the theft convictions – because Defendant's credibility was of "paramount" importance at trial. The trial court excluded the more recent theft convictions because they posed a greater risk of unfair prejudice since Defendant was charged with theft in the present case, potentially leading the jury to misuse the theft convictions as propensity evidence. The trial court recognized that robbery and by extension, aggravated robbery, are crimes of dishonesty and are therefore admissible for impeachment. *State v. Galmore*, 994 S.W.2d 120, 122 (Tenn. 1999); *State v. Caruthers*, 676 S.W.2d 935, 941 (Tenn. 1984); *State v. Pyburn*, No. M2003-01090-CCA-R3-CD, 2004 WL 1857109, at *11-12 (Tenn. Crim. App. Aug. 16, 2004) (affirming the trial court's admission of a more than ten-year-old aggravated robbery conviction for impeachment in first degree murder case where the court

found aggravated robbery to be a crime of dishonesty, not similar to the charged offense, and therefore more probative of credibility than prejudicial); *State v. Welcome*, 280 S.W.3d 215, 223 (Tenn. Crim. App. 2007) (upholding trial court's admission of a prior aggravated robbery conviction for impeachment where the court found the prior conviction to be a crime of dishonesty, expressly considered its similarity to the charged offense of aggravated robbery, and concluded that its probative value outweighed the danger of unfair prejudice). The trial court also noted that Defendant's necessity defense placed his mental state and his credibility at the center of the case. In his opening statement, defense counsel argued that Defendant lacked the intent to deprive the victim of his truck.

Additionally, the trial court instructed the jury that the convictions were to be considered only for assessing Defendant's credibility, and we presume the jury followed those instructions and used the convictions for that limited purpose. *State v. Rimmer*, 623 S.W.3d 235, 255 (Tenn. 2021). The trial court did not abuse its discretion by admitting the four 1991 convictions.

Because the trial court followed the rule, applied the correct legal standard, and articulated a sound basis for its decision, Defendant has not shown an abuse of discretion and is not entitled to relief. *Reynolds*, 635 S.W.3d at 921.

## II. Direct Examination – TBI Agent Brown's Testimony

Defendant contends his right to present a defense was violated because he should have been allowed to question Agent Brown on whether he verified aspects of Defendant's allegation of corruption in the Monroe County Jail. Defendant argues that although the jury heard there was corruption generally, they received no corroboration from Agent Brown leaving Defendant's testimony unsupported. The State argues Defendant's right to present a defense was not violated because he elicited testimony from Agent Brown that a TBI investigation existed, the investigation matched the time Defendant was in the Monroe County Jail, and Defendant was interviewed by Agent Brown as part of the investigation. We agree with the State.

Generally, "the propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for abuse of discretion." *State v. James*, 315 S.W.3d 440, 460 (Tenn. 2010) (quoting *State v. Caughron*, 855 S.W.2d 526, 540 (Tenn. 1993)). A trial court does not abuse its discretion unless it "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *Herron*, 461 S.W.3d at 904.

"Principles of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony." *State v. Cannon*, 642 S.W.3d 401, 449 (Tenn. Crim. App. 2021) (quoting *State v. Flood*, 219 S.W.3d 307, 316 (Tenn. 2007)); *see also Chambers v. Mississippi*, 410 U.S. 284, 294, (1973); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn. 2000). The right to present a defense is not unrestricted. *Cannon*, 642 S.W.3d at 449 (citing *Flood*, 219 S.W.3d at 316).

In its ruling regarding Agent Brown's testimony, the trial court delineated the permissible scope of the testimony to allow that necessary to support Defendant's necessity defense while protecting the confidentiality of the TBI's investigation. The trial court gave specific guidance on what matters could be addressed, and Agent Brown confined his testimony to the scope authorized by the trial court: he confirmed the existence of an ongoing investigation into unlawful conduct in the Monroe County Jail, that the investigation encompassed the period during which Defendant was incarcerated there, and that Defendant participated in two interviews as part of the investigation. He did not divulge any confidential matters or any specific details regarding the investigation.

The trial court was required to navigate two competing interests: Defendant's constitutional right to present a defense and the TBI's interest in maintaining the confidentiality of ongoing investigative methods and sensitive law-enforcement information. *Brown*, 29 S.W.3d at 431; *cf.* T.C.A. § 10-7-504. Recognizing the importance of Agent Brown's testimony concerning Defendant's necessity defense, the trial court denied the TBI's motion to quash with respect to Agent Brown and allowed him to testify at trial regarding his investigation into possible corruption in the Monroe County Jail. The record shows the trial court carefully evaluated the scope of the proposed testimony and crafted a narrow allowance that preserved Defendant's ability to elicit relevant, admissible information without compelling disclosure of investigative techniques or internal TBI processes that fell outside the proper scope of trial testimony.

This measured approach reflects a sound exercise of discretion rather than an arbitrary restriction, and Defendant has not demonstrated that the limitation imposed prevented him from presenting a meaningful defense. The trial court did not abuse its discretion in confining Agent Brown's testimony to the questions allowed. Defendant is not entitled to relief.

### III. Proof of Firearms in Stolen Vehicle

Defendant asserts that testimony suggesting there were firearms in the victim's truck was improperly admitted because the indictment did not reference any firearms, which he contends indicates the grand jury did not find probable cause to believe firearms were present in the vehicle. He further asserts that the testimony concerning firearms unfairly

- 14 -

undermined his credibility, given the grand jury declined to charge him with being a felon in possession of a firearm even though he acknowledges having enough prior convictions to qualify as a career offender. The State argues that proof of firearms was properly admitted because they were part of the contents of the motor vehicle alleged to have been stolen and that proof of the firearms was relevant to value, an element of theft. The State further argues that any prejudice was minimal and did not portray Defendant as violent. We agree with the State.

Generally, "[a]dmission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." *Cannon*, 642 S.W.3d at 449 (quoting *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004)). As stated previously, an abuse of discretion occurs when the trial court applies an incorrect standard or reaches an illogical or unjust decision. *Herron*, 461 S.W.3d at 904. All "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, even relevant evidence, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Here, the true bill charging Defendant on count one alleged that he "unlawfully and knowingly obtain[ed] or exercise[ed] control over, to-wit: *motor vehicle and contents*, of the value of at least $2,500.00 but less than $10,000.00, of [the victim] without his effective consent, with intent to deprive the said [the victim.]" (emphasis added). *See* T.C.A. § 39-14-103(a) (defining theft). Although the value of the property stolen is not an element of the theft offense, it must be determined in order to establish the grade of the theft averred in the indictment. *See id.* § 39-14-105(a); *State v. Jones*, 589 S.W.3d 747, 756-57 (Tenn. 2019) (citing *State v. Overton*, 245 S.W.2d 188, 189 (Tenn. 1951)). Because the indictment expressly included both the vehicle and its contents, the State was entitled to introduce evidence identifying the contents of the vehicle and establishing their value. In any event, the State independently established that the value of the truck alone surpassed the $2,500 statutory threshold required to sustain a Class D felony theft.

The fact that the grand jury did not charge Defendant with felon in possession of a firearm has no bearing on the admissibility of the victim's testimony describing the contents of his truck at the time of the theft. The testimony was introduced to establish the nature and value of the stolen property — not to prove an uncharged offense. Finding no error in the exercise of the trial court's discretion, Defendant is not entitled to relief.

IV.    Victim's Remark about Defendant's "Classification"

Defendant argues that the jury was improperly exposed to the victim's comment that he "should have never been out because of his classification," and that the trial court's failure to give an additional curative instruction allowed prejudicial inferences arising to plain error. The State maintains that plain-error relief is unwarranted because none of the required factors are satisfied. We agree with the State.

To establish plain error, Defendant bears the burden of persuading this court that the following five prerequisites are satisfied: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *Jones*, 589 S.W.3d at 762 (quoting *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)); *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (establishing the test for plain error review).

The decision to give a curative instruction is a matter within the trial court's discretion. *Bradley v. Bishop*, 538 S.W.3d 518, 534 (Tenn. Ct. App. 2017). Curative instructions enable a trial court to remedy potential prejudice by directing the jury on how to treat improper testimony, and juries are presumed to follow such instructions whenever they are reasonably suited to cure the error. *See State v. Hall*, 976 S.W.2d 121, 148 (Tenn. 1998); *Crafton v. State*, 545 S.W.2d 437, 439-40 (Tenn. Crim. App. 1976).

The record shows that when Mr. Stedred mentioned Defendant's classification, the trial court sustained Defendant's objection and instructed the jury to "strike the last answer." Although Defendant later raised the issue in an amended motion for new trial, Defendant never requested any further curative instruction. Defendant asserts that the trial court's failure to instruct *sua sponte* that the remark "was improper, irrelevant, and must be disregarded" constituted plain error.

We conclude that all of the factors necessary for finding plain error are not present. First, no unequivocal rule of law was breached. The trial court's prompt instruction to disregard the statement cured any error here. *State v. Tyler*, 598 S.W.2d 798, 802 (Tenn. Crim. App. 1980) (holding that an instruction to ignore a comment generally cures any error unless the comment was so prejudicial that it more probably than not affected the judgment in the case); *State v. Townsend*, 688 S.W.2d 842, 843 (Tenn. Crim. App. 1984) (holding that a witness's unsolicited remark identifying the offense as a "Class X felony," a category of crimes formerly assigned to the most serious non-homicide crimes, was cured by the trial court's prompt instruction to disregard it); *State v. Torrey*, 880 S.W.2d 710, 713 (Tenn. Crim. App, 1993) (holding that a Department of Correction employee's unsolicited

implication that the defendant had a prior record did not warrant a mistrial where trial court promptly instructed the jury to disregard the employee's testimony and reminded the jury of the parties' stipulation that the defendant had no prior record). We rest on the presumption that the jury followed the trial court's instruction to "strike" the victim's comment about Defendant's classification. *Rimmer*, 623 S.W.3d at 255. In our view, instructing the jury with Defendant's proposed instruction would have been a disproportionately severe remedy for a remark so brief and incidental. In fact, the circumstances suggest it may have been preferable to waive the issue so as not to draw unnecessary attention to it, and we cannot conclude that it was not waived for tactical reasons.

In any event, consideration of the matter is not necessary to do substantial justice. Defendant's incarceration was an undisputed fact central to the case and his defense, and that fact necessarily carried with it the understanding that an inmate working outside the facility would have some form of classification. Under these circumstances, it is our conclusion that Mr. Stedred's comment had no effect on the jury. *State v. Rodriguez*, 254 S.W.3d 361, 374 (Tenn. 2008). Defendant is not entitled to relief.

V. Judicial Questioning of Valuation Expert

Defendant contends the trial court vouched for the credibility of the State's valuation expert, Mr. Viles, by asking him for personal car-buying advice in front of the jury. He acknowledges that "[o]bjecting to a trial judge's own conduct in front of a jury is a 'dangerous' tactic that [defense] counsel often avoids to prevent further antagonizing the court or highlighting the issue[,]" but nevertheless maintains that the trial court breached a clear rule of law prohibiting judges from commenting on the evidence.

The State responds that the trial court's "light-hearted questioning" did not rise to the level of plain error because it neither endorsed the State's valuation witness nor left the jury without guidance, as the court promptly instructed the jurors to disregard the exchange. We agree with the State.

As previously noted, to establish plain error a defendant must show five elements: the record clearly establishes what occurred in the trial court; a clear and unequivocal rule of law was breached; a substantial right of the defendant was adversely affected; the defendant did not waive the issue for tactical reasons; and consideration of the error is necessary to do substantial justice. *Adkisson*, 899 S.W.2d at 641-42.

Tennessee Constitution Art. VI, Section 9 prohibits judges from making improper comments on the evidence that could influence the jury's fact-finding role. *State v. Schiefelbein*, 230 S.W.3d 88, 120 (Tenn. Crim. 2007). The trial judge's responsibility is

"not to express any thought which would imply that his or her opinion was in favor of or against defendant." *State v. Gregg*, 874 S.W.2d 643, 644 (Tenn. Crim. App. 1993). Unless the record demonstrates that the trial judge questioned a witness "in such a manner to clearly show the accused ha[d] been prejudice, a new trial will not be granted." *State v. Hardin*, 691 S.W.2d 578, 581 (Tenn. Crim. App. 1985).

The trial court's brief, on-the-record "hypothetical" questions to Mr. Viles did not constitute plain error, as nothing in the exchange reflected the court's opinion on his credibility or on the weight of the State's evidence. As for plain error, notably, the issue was waived for tactical reasons. Defendant acknowledges that no objection was made to the trial court's questions because doing so "in front of a jury is a 'dangerous' tactic that counsel often avoids to prevent further antagonizing the court or highlighting the issue." This admission confirms that counsel's silence was not inadvertent but a strategic decision. "It is difficult to conceive of evidence more probative of an attorney's reason for not objecting than the attorney's own statement." *Smith*, 24 S.W.3d at 284 (quoting *Walker*, 910 S.W.2d 381, 400 (Tenn. 1995)).

We also conclude that no clear and unequivocal rule of law was breached. We presume the jury followed the trial court's immediate instruction to disregard the exchange, as nothing in the record suggests otherwise. *Rimmer*, 623 S.W.3d at 255; *Tyler*, 598 S.W.2d at 802 (concluding that a prompt instruction from the trial judge directing the jury not to consider improper evidence generally cures any error).

The record further shows that, before Mr. Viles testified, the trial court instructed the jury that although Mr. Viles was recognized as an expert in vehicle valuation and permitted to offer opinions within that field, the jury alone was responsible for determining the weight and credibility of his testimony. *Schiefelbein*, 230 S.W.3d at 120 (declining to find plain error where trial judge asked a brief follow-up question to expert on the record without revealing any opinion on the evidence and jury was instructed on its fact-finding role); *Gregg*, 874 S.W.2d at 644 (rejecting claim of improper judicial comment where judge's statement about testing instrument was unrelated to guilt and curative instruction adequately corrected any error). The trial court repeated this same instruction at the close of proof. In light of these repeated admonitions, Defendant's tactical waiver, and the prompt curative instruction, the trial court's actions do not constitute error, much less plain error. Defendant is not entitled to relief.

## VI.  Cross-Examination of Deputy Williams

Defendant contends the trial court erroneously sustained the State's objection to his question asking Deputy Williams whether it was advisable to leave loaded firearms in a truck with a plexiglass window. He argues that an opinion from an officer that such

conduct was unwise would have undermined the victim's credibility that his firearms were in the truck thereby weakening the proof of their value, an essential element of theft. The State responds that the question was irrelevant and that any error in sustaining the objection was harmless because the truck alone was worth more than $2,500. We agree with the State.

This issue implicates the trial court's regulation of witness examination, an evidentiary matter within its discretion. "The propriety, scope, manner, and control of the cross-examination of witnesses rests within the sound discretion of the trial court." *State v. Hardison*, 680 S.W.3d 282, 315 (Tenn. Crim. App. 2023) (citing *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995)). "Absent a clear abuse of discretion that results in manifest prejudice to the defendant, this court will not interfere with the trial court's exercise of its discretion on matters pertaining to the examination of witnesses." *Id.* (citing *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984)). Relevant evidence is any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Naturally, "[e]vidence which is not relevant is not admissible." Tenn. R. Evid. 402.

Defendant sought to introduce testimony suggesting that someone else stole the firearms by questioning the victim's decision to store them in his truck. We fail to see how questioning Deputy Williams on whether it would be prudent or unwise to store firearms in a truck with a plexiglass window meaningfully challenges the victim's testimony that he had firearms in his vehicle. The "plausibility" of the victim's account regarding the contents of his truck was already explored on cross-examination, and the jury was free to disbelieve the victim in light of the fact that the firearms were never recovered. The jury also viewed body camera footage showing Defendant's arrest and the interior of his vehicle, which contained no firearms. Because the theory behind the question was speculative and lacked any meaningful connection to a fact of consequence, its remoteness made the question and any possible answer irrelevant under the Rules of Evidence. For the question to have any relevance, Defendant must assume that Deputy Williams would testify that such storage practices are unreasonable, but without an offer of proof, we cannot make that assumption or speculate as to how he would have answered. *State v. Goad*, 707 S.W.2d 846, 852-53 (Tenn. 1986) ("When [excluded evidence] consists of oral testimony, it is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible."). Given the remoteness of the proposed testimony to the issue of the victim's credibility regarding the contents of his truck, the trial court did not err in sustaining the State's objection. Defendant is not entitled to relief.

Defendant avers the trial court erred in giving a flight instruction arguing the instruction did not fit the facts of this theft case and, by giving the instruction, improperly supplied the jury with an additional and unsupported basis from which to infer guilt.  The State argues the flight instruction was proper because the proof showed Defendant took deliberate steps to avoid detection.  The State further argues that under Tennessee law, the jury needs only evidence from which it could infer concealment, and the instruction accurately reflected that legal standard.  We agree with the State.

A defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000).  A jury charge should contain no statement which is inaccurate, inapplicable, or which might tend to confuse the jury.  *State v. Hatcher*, 310 S.W.3d 788, 812 (Tenn. 2010).  Whether a jury instruction is required by the facts of a particular case is a mixed question of law and fact which is reviewed de novo.  *State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013); *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001).  A jury instruction must be considered in its entirety and read as a whole rather than in isolation.  *State v. Leach*, 148 S.W.3d 42, 58 (Tenn. 2004).  A jury instruction is only considered "prejudicially erroneous" if the jury charge, when read as a whole, "fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005).

"In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction." *State v. Berry*, 141 S.W.3d 549, 588 (Tenn. 2004).  Sufficient evidence supporting a flight instruction exists where there is evidence of "both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown." *State v. Burns*, 979 S.W.2d 276, 289-90 (Tenn. 1998) (citation and internal quotation marks omitted).  The State may satisfy the subsequent hiding out, evasion, or concealment requirement by presenting proof from which a jury might infer that the defendant committed such acts.  *Rogers v. State*, 455 S.W.2d 182, 186-87 (Tenn. Crim. App. 1970).  "Evidence of flight to avoid arrest may be rebutted by a credible explanation of some motive other than guilt, but the conclusion to be drawn from such evidence is for the jury upon proper instructions from the trial court." *Hall v. State*, 584 S.W.2d 819, 821 (Tenn. Crim. App. 1979).

Defendant objected to the flight instruction, arguing that it was improper because he did not flee from officers and when confronted, cooperated fully during the arrest.  The trial court noted that the issue turned on whether Defendant's movement showed consciousness of guilt, observing that he left Monroe County but did not flee from officers

- 20 -

in Knoxville, making the applicability of a flight instruction "an interesting question." The State responded that the instruction was justified because flight requires both a leaving of the scene of the crime and a subsequent evasion or departure, and Defendant's own testimony showed that after the theft, he traveled from Monroe County through Roane County before reaching Knox County, thereby satisfying the elements of flight.

The trial court remarked that although the court generally regarded the pattern flight instruction as "one of the best worded instructions," the court was nonetheless troubled by the paragraph defining "flight." The trial court noted that "flight" requires "both a leaving the scene of the difficulty and the subsequent hiding out, evasion," a two-part definition of that did not originate from a statute or legislative authority but from a judicial decision issued "over [fifty] years ago"[4] and the opinion did not explain how it arrived at the two-part definition. The trial court acknowledged however, that the instruction as a whole properly allowed jurors to consider innocent explanations – such as Defendant's testimony that he left Monroe County due to corruption in the jail – alongside the State's theory that his failure to contact law enforcement afterward suggested evasion. Although "a close call," the trial court resolved the issue by granting the State's request to give the instruction because flight was fairly raised by the proof and instructed the jury as follows:

> The flight of a person accused of a crime is a circumstance which, when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.

> The law makes no precise distinction as to the manner or method of flight; It may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction.

> However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving the community for parts unknown, to constitute flight.

> If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you

---

[4] *Rogers v. State,* 455 S.W.2d 186-87 (Tenn. Crim. App. 1970) (setting forth the two-prong definition of flight for courts to determine whether a flight instruction is warranted).

decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case. Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

*See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I. – Crim. 42.18. This flight instruction has been cited with approval by this court. *See State v. Kendricks*, 947 S.W.2d 875, 885-86 (Tenn. Crim. App. 1996) (citing *State v. Payton*, 782 S.W.2d 490, 497-98 (Tenn. Crim. App. 1989)); *State v. Whittenmeir*, 725 S.W.2d 686, 688 (Tenn. Crim. App. 1986)).

Defendant contends that the flight instruction improperly permitted the jury to infer a consciousness of guilt. Contrary to Defendant's assertion, the trial court properly cautioned the jury that "if flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged," and further instructed that "an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case." We presume the jury adhered to these instructions. *Rimmer*, 623 S.W.3d at 255.

Defendant also contends that there was no proof of concealment in that he "did not hide in the woods, discard clothing, alter his appearance, or lie about his identity." The record does not support Defendant's characterization of the facts. Defendant's initial departure occurred while he was in lawful custody, when he took advantage of an opportunity during his maintenance crew assignment to abscond – conduct that could have supported an escape charge.[5] After leaving custody, he drove from Monroe County, through another county, and into a third county where he was ultimately located. Along the way, he picked up a female passenger and asked her to purchase clothing for him, and, as shown on Deputy Williams's body camera footage, he was wearing the victim's hooded jacket and sunglasses – facts that together suggest efforts at concealment or evasion, particularly given that his jail-issue pants were not visible while he was driving.

Defendant's reliance on the fact that he later submitted to arrest without resistance does not negate the earlier, undisputed acts of flight. *Townsend*, 688 S.W.2d at 844 (holding that the flight instruction was warranted where the defendant escaped from the Lake County Jail by holding a razor to another inmate's throat and fleeing once the cell door opened); *State v. Johnson*, No. 02C-01-9504-CC-00097, 1997 WL 80970, at *7 (Tenn. Crim. App. Feb. 27, 1997) (upholding the flight instruction where the defendant, after being released from custody, could not be located in Obion County, failed to appear for a scheduled preliminary hearing despite knowing the date and time, and was ultimately

---

[5] *See, e.g.,* T.C.A. § 39-16-605.

found in Georgia approximately one month later). The instruction on flight was more than fairly raised by the proof. The trial court did not err in giving the flight instruction. Defendant is not entitled to relief.

## VIII.   Cumulative Error

Finally, Defendant contends that he is entitled to relief under the cumulative error doctrine. The cumulative error doctrine recognizes that there may be many errors that are harmless in isolation, but "have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant relief under the cumulative error doctrine, there must have been more than one actual error committed during the trial proceedings. *Id.* at 77. As we have found no error, Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.


s/*Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE